**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**MCALLEN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | CASE NO. 7:08-cv-196 |
| | ) | |
| 0.98 ACRES OF LAND, more or less, | ) | |
| situated in HIDALGO COUNTY, TEXAS; | ) | |
| and PAMELA RIVAS, et al., | ) | |
| | ) | |
| *Defendants*. | ) | |

**COURT ORDERED BRIEF ON APPOINTMENT OF LAND COMMISSION**
**FOR "BORDER FENCE" CASES IN THE SOUTHERN DISTRICT OF TEXAS**

The United States of America ("United States"), requests appointment of a land

commission to determine just compensation for all cases filed in this district to acquire property

interests needed for the Secure Border Initiative in the Rio Grande Valley of south Texas (the

"Project").  A referral of this issue to a Land Commission is appropriate – if not mandated – in

an undertaking such as the instant Project.  In the interest of justice and fairness to both

landowners (represented and unrepresented) and taxpayers, referral is necessary to facilitate

expeditious and uniform resolution of all contested compensation claims arising from among the

270 tracts anticipated to be taken.

I.    **Jury Demand in Federal Eminent Domain Cases Should Be Denied upon Showing**
      **of Exceptional Circumstances Stemming from Character, Location, or Quantity of**
      **the Property or Other Just Reasons Relating to the Project as a Whole.**

There is no right to a jury trial in federal eminent domain proceedings.  *United States v.*

*Reynolds*, 397 U.S. 14, 18 (1970); *Georgia Power Co. v. 138.30 Acres of Land*, 596 F.2d 644,

647 (5th Cir. 1979).  Instead, "[t]he mode of trial, whether by the court, by jury, or by

1

commission, is one of judicial administration" through the proper exercise of the Court's

discretion in accordance with Federal Rule of Civil Procedure 71.1(h).  *United States v. Buhler*,

254 F.2d 876, 878 (5th Cir. 1958).  Rule 71.1(h), entitled "Trial of the Issues,"[1] provides in

relevant part:

> (1) *Issues Other Than Compensation; Compensation.* In an action involving
> eminent domain under federal law, the court tries all issues, including
> compensation, except when compensation must be determined:
>
> (A) by any tribunal specially constituted by a federal statute to determine
> compensation; or
>
> (B) if there is no such tribunal, by a jury when a party demands one within the
> time to answer or within any additional time the court sets, unless the court
> appoints a commission.
>
> (2) *Appointing a Commission; Commission's Powers and Report.*
>
> (A) *Reasons for Appointing.* If a party has demanded a jury, the court may instead
> appoint a three-person commission to determine compensation because of the
> character, location, or quantity of the property to be condemned or for other just
> reasons.

Fed. R. Civ. P. 71.1(h).

Thus, as set forth in the Rule, appointment of a commission must be considered in light

of the "character, location, or quantity of the property to be condemned or for other just

reasons."  Fed. R. Civ. P. 71.1(h)(2)(A).  Exceptional reasons or circumstances based on one or

more of these factors must exist to justify the denial of a jury demand.  *Buhler*, 254 F.2d at 879.

In considering these factors, the Court takes into account the entirety of the project at issue, not

just the individual tract or case that may be before it at the time.  As stated by the Fifth Circuit:

---

[1] Rule 71.1 was prior to 2008 designated Rule 71A.  Any change in language of former Rule 71A
was for "stylistic" reasons, with no intent to alter the substance of the Rule.  Fed. R. Civ. P. 71.1
advisory committee's notes.

> The fact that the property of the particular landowners involved in these cases was small and possessed unique characteristics, or that the landowners desired a jury trial, is not controlling;  the rule focuses on the character, location or quantity of the entire property being condemned, hence on the overall scope of the project. . . .  A tremendous undertaking may embrace particular tracts of small size whose appraisal is relatively easy.  The commission is appointed for the entire project, not simply for specific parcels whose value is difficult to determine.

*Georgia Power Co.*, 596 F.2d at 648 (citing *Buhler*, 254 F.2d at 880).

Of the factors enumerated in the Rule, the character of the land taken -- either in reference to the land's unusual qualities, the complexity of the interest acquired or the complexity of its appraisal -- is often cited as justification for the appointment of a commission. *See, e.g., Buhler*, 254 F.2d at 880 (involving condemnation of one parcel that included numerous uses); *United States v. 4.43 Acres of Land*, 137 F. Supp. 567, 571 (N.D. Tex. 1956) (involving glide angle plane easements of varying heights and angles over developed and undeveloped parcels with disparate uses located in various proximity to Air Force base); *see also United States v. 320.0 Acres of Land,* 605 F.2d 762, 827-828 (5th Cir. 1979) (citing complexity of "sophisticated standard" of just compensation due to increase or decrease in value resulting from certain government activities).  Location may also warrant referral to a commission where the subject property is not convenient to a federal courthouse.  *See, e.g.*, *United States v. Wallace*, 201 F.2d 65 (10th Cir. 1952) (sustaining appointment for one parcel of land situated 60 miles from nearest federal courthouse, noting expense for court to conduct jury view and inconvenience to witnesses, nearly all of whom resided in vicinity of condemned property).

However, the factor that invariably lends support to the finding of "exceptional circumstances" relates to *quantity*, especially "in cases involving large areas held by many small landowners."  *Georgia Power Co.*, 596 F.2d at 648 (internal quotations and citations omitted).  And at times, quantity, coupled with the attendant circumstances of a large government project

involving the condemnation of numerous parcels spread over large areas, may compel the

appointment of a commission.  One such situation involved the taking of hundreds of tracts of

tidal mangrove lands included in an expansion of Everglades National Park. *320.0 Acres of*

*Land,* 605 F.2d at 828 ("In light of the number of parcels involved . . . , the remoteness of these

parcels from any federal courthouse in which a jury trial might be conducted, and the complexity

of the issues, this certainly is one of those exceptional cases in which trial by a commission is

not only appropriate, but is required.").

## II.    The Desirability of Uniform Awards and Treatment of Claimants Warrants
   Appointment in Large Projects Involving Condemnation.

'Quantity' often serves as justification for the appointment of commissions because of

the desirability of providing uniform, even-handed treatment of claimants – especially where

many claimants are similarly situated.  The experience of the Tennessee Valley Authority (TVA)

cases, for which Congress established commissions to determine just compensation and which

involved large areas and many affected owners, served as the impetus for provision of

commissions in the Rule.  Fed. R. Civ. P. 71.1(h) advisory committee's notes.  As noted in

*Buhler*, the TVA commission experience yielded equitable results in resolving just compensation

disputes:

> The TVA condemns large acres of land of similar kind, involving many owners.
> Uniformity in awards is essential.  The commission system tends to prevent
> discrimination and provide for uniformity in compensation.  The jury system
> tends to lack uniformity.  Once a reasonable and uniform standard of values for
> the area has been settled by a commission, litigation ends and settlements result.

254 F.2d at 879 n.7.  In cases where the takings are exceptional by virtue of their number and

similarity of the types of parcels taken, courts have consistently weighed the objective of

achieving uniform results as favoring the appointment of a commission.   As observed by the

Ninth Circuit: "the Rule allows as proper a grouping of similar parcels for consideration, to the end that discrimination be avoided and uniformity in compensation be had." *United States v. Hall*, 274 F.2d 856, 859 (9th Cir. 1960); *see also 320.0 Acres*, 605 F.2d at 829 n.55 ("it may well be that the fairest and most efficient method of trying the remaining Everglades cases would be to . . . appoint one commission for the just compensation trial of the 52 cases hereby remanded as well as the 248 other pending cases.").

In addition to uniformity, resolution of just compensation claims involving takings of numerous tracts may more readily be facilitated by a commission. *United States v. Merz*, 376 U.S. 192, 197 (1964) ("The use of a commission to resolve the issue of just compensation is justified by the facility with which commissioners may inspect the property and a likelihood that uniformity of awards may be realized expeditiously."); U.S. Gen. Accounting Office, Federal Land Acquisitions by Condemnation – Opportunities to Reduce Delays and Costs 52-53 (1980) (available at http://archive.gao.gov/d46t13/112295.pdf) ("Use of a commission allows earlier hearings of condemnation cases and lightens the burden of the judge.").  In a recent decision upholding the appointment of a commission following the condemnations of 16 tracts of land, the Seventh Circuit approved the justifications for appointment cited by the trial judge, most of which underscore the concepts of uniformity and facility:

> First, one commission is better than 16 juries. . . .  Sixteen trials would be too many (other litigants, waiting in the queue to have their own cases resolved, would be sorely inconvenienced), and one mega-trial would be too complex, the judge thought. Second, a commission proceeds less formally than does a trial, so the commissioners can visit the parcels and learn facts about them (and their market value) more readily than can a jury, which would sit in Chicago, more than 100 miles from the parcel farthest from the courthouse. Any evidentiary hearings likewise could be conducted near the parcels and so would be more convenient to the parties, counsel, and witnesses. Third, the commission could be (and was) staffed with experts in evaluating market prices for land, while lay jurors likely would be at a loss to evaluate the inevitable disagreement among

5

> experts hired by the litigants. Commissions thus are less likely than juries to split the difference in the parties' valuations (a tendency that encourages litigants to take extreme positions in jury trials).

*Northern Border Pipeline Co. v. 64.111 Acres of Land in Will County*, 344 F.3d 693, 695 (7th Cir. 2003). And unlike the verdict rendered by a jury, a commission is required to detail its determination in its report such that "[t]he path followed by the commission in reaching the amount of the award shall be distinctly marked, if not blazed with an array of findings of subsidiary facts that demonstrate that the ultimate finding is soundly and legally based." *Georgia Power Co.*, 596 F.2d at 649 (citations omitted); *Mertz*, 376 U.S. at 198. Furthermore, the Court decides any party's objections to the report, factual or legal, *de novo* as with the report of a master pursuant to Rule 53(f). Fed. R. Civ. P. 71.1(h)(2)(D). In this way, the Court serves as a safeguard to ensure that fairness does not give way to facility.

**III.    Appointment of a Land Commission for the Project Is Necessary in Order to Achieve Fair, Expeditious and Uniform Awards of Just Compensation.**

The Secure Border Initiative in the Rio Grande Valley encompasses in excess of 250 separate tracts of land in an area extending more than 120 miles from Brownsville to west of Roma. Nearly every tract is separately owned; much of the land taken is irrigated crop land but also includes properties being used for residential and commercial purposes. In almost all instances the takings represent "partial takings" in the form of relatively narrow, small tracts that either bisect or clip the end of larger parent tracts. *See United States v. 158.24 Acres of Land*, 515 F.2d 230, 232 n.2 (5th Cir. 1975) ("A partial taking refers to appropriation in fee of a segment of a larger tract."). In all such cases, the method of arriving at just compensation is the same: determine "the difference between the value of the parent tract before the taking and its value after the taking." *United States v. 8.41 Acres of Land*, 680 F.2d 388, 392 (5th Cir. 1982).

6

Determination of the after value will involve consideration of, *inter alia*, the degree and manner of access the United States provides to the severed remainder parcel on the Rio Grande side of the fence.  *See United States v. 14.38 Acres of Land*, 80 F.3d 1074, 1077 (5th Cir. 1996) .[2] Competing opinions of before and after value will, of course, be offered through the testimony of valuation experts, though there likely will be considerable fact witness testimony with respect to the validity of many of the experts' assumptions (such as with respect to the degree of access).

In many instances the cases present nearly identical considerations (albeit with potentially different impacts upon the larger parcel) that must be weighed in arriving at just compensation in individual cases, but disparate outcomes would inevitably result if the issue is resolved by juries in each case.  In addition, in some cases landowners have skilled counsel while in other cases the landowners are proceeding *pro se*.  And while most individual trials would likely be resolved in the course of a week or less,[3] the queue to the courthouse is long.

---

[2] As explained by the Fifth Circuit:

> When the Government has physically acquired through its eminent domain powers a portion of a distinct tract of property, 'the compensation to be awarded includes not only the market value of that part of the tract appropriated, but the damage to the remainder resulting from that taking, embracing, of course, injury due to the use to which the part appropriated is to be devoted.' *United States v. Grizzard,* 219 U.S. 180 (1911). The proper measure of damages in such a case is the difference between the value of the parent tract before the taking and its value after the taking. *United States v. 8.41 Acres of Land, Situated in Orange County, State of Texas,* 680 F.2d 388 (5th Cir.1982).

*14.38 Acres of Land*, 80 F.3d at 1077.

[3] Given the magnitude of the project and the notoriety surrounding it, it may be difficult to empanel juries.  *Voir dire* might need to be extensive due to widespread publicity and the close nature of families in the Valley, thereby further lengthening the process. If a jury were empaneled, a view  would likely also be required to assist it in assessing the information presented.  As explained in a leading treatise on eminent domain,

> A view of the subject property . . . is often essential for a thorough understanding of the case by the fact-finding body responsible for making the final award of

(continued...)

7

From the 236 cases currently filed in this district, approximately 80 may result in trial.  In order to try these cases, it could take more than an uninterrupted year of the Court's time.[4]

The Project at issue in this case is just the sort for which land commissions are appointed. The Project presents special circumstances based on those enumerated in the Rule – character, location, or quantity.  The computation for just compensation in a partial taking – the "character" of the taking in most instances here – is relatively straightforward, but its application can be complex, especially where the parent tract is bisected by the taking and the Project's infrastructure.  The distribution of these parcels throughout the Rio Grande Valley is significant, but more relevant than location is the quantity of tracts, especially the high degree of similarity by type and approach to valuation.  In order to achieve fair, uniform compensation awards expeditiously for all affected owners (represented and unrepresented) in the Rio Grande Valley,

---

[3](...continued)
>compensation due the owner.  In this regard, nearly every jurisdiction has either authorized or permitted a view in eminent domain proceedings.

5 *Nichols on Eminent Domain* § 18.08 (2005).  Though the Court has discretion in ordering a view of the property in a federal eminent domain proceeding, *see Phelps Dodge Corp. v. Atchison, Topeka and Santa Fe Ry. Co.*, 400 F.2d 20 (10th Cir. 1968), circuit courts nevertheless encourage trial judges to order views of condemned property by noting the great weight that is to be given such a view in the jury's deliberations.  *See, e.g., United States v. Wise*, 131 F.2d 851 (4th Cir. 1942).  And though there are two federal courthouses in the Rio Grande Valley – McAllen and Brownsville – some of the contested cases are situated as much as 40-50 miles from the nearest courthouse.  Once juries were empaneled to try these cases, the logistics of conducting the view would further attenuate the length of the trials.

[4]At a court hearing on July 31, 2008, the Court suggested that cases could be referred to magistrate judges to expedite matters.  Referral to a magistrate judge for trial of cases involved in an undertaking as large and complex as the Secure Border Initiative is contrary to Department of Justice policy in large condemnation projects and deviates from legal precedent that suggests a land commission is the appropriate trier of fact.  Therefore, the United States will not consent to trial before a magistrate judge if such a referral is requested.  Fed. R. Civ. P. 73(a) (magistrate judge may only conduct trial where all parties consent).

appointment of a commission is required.[5]  In the absence of a commission, each jury verdict may be vastly different from another; landowners have every incentive to hold out for trial, profer inflated values, and hope for the best.  On the other hand, a commission's considered conclusions set forth in its reports approved by the Court would provide incentive and justification to both the United States and landowners to resolve their dispute once the commission's determinations as to value are made with respect to landowners similarly situated.

As in the case of *320.0 Acres*, an undertaking of this size comprised of mostly small tracts and numerous owners warrants the appointment of a commission.  In this case, the appointment would facilitate uniform awards and a speedier resolution of contested compensation claims.  Failure to appoint a commission will, by contrast, result in protracted litigation of these matters and disparate awards to claimants – a very unsatisfactory result for all parties involved.

### Conclusion

Based on the foregoing, the United States requests the appointment of a land commission to determine just compensation for all cases filed in this district to acquire property interests needed for the Secure Border Initiative in the Rio Grande Valley of south Texas.

---

[5] Fairness of result is also paramount to the United States, as well as to the public.  *See 14.38 Acres of Land*, 80 F.3d at 1078 ("the public . . . has vested interests in insuring that the Government does not pay more than what the owner justly requires.").

Respectfully submitted,

DONALD J. DeGABRIELLE, JR.
United States Attorney

By:    /s/ DANIEL D. HU

DANIEL DAVID HU
Assistant United States Attorney
Texas Bar No. 10131415
919 Milam, Suite 1500
P.O. Box 61129
Houston, Texas 77208
Tel:  (713) 567-9518
Fax:  (713) 718-3303
E-mail: Daniel.hu@usdoj.gov

Attorney In Charge for the United States of
America

Of counsel:    VIRGINIA P. BUTLER
Chief, Land Acquisition Section
Environment & Natural Resources Division
P.O. Box 561
Washington, D.C.  20044-0561
Tel.: (202) 616-3129
Fax: (202) 305-0398
E-mail: virginia.butler@usdoj.gov

## <u>CERTIFICATE OF CONFERENCE AND SERVICE</u>

I hereby certify that on November 7, 2008, I electronically filed the foregoing with the Clerk of

the Court using the CM/ECF system and sent a copy via ECF to the following counsel:

David Garza - dgarza@garzaandgarza.com

Respectfully submitted,

DONALD J. DeGABRIELLE, JR.
United States Attorney

By:      /s/ DANIEL D. HU
                DANIEL DAVID HU
Assistant United States Attorney
Texas Bar No. 10131415
919 Milam, Suite 1500
P.O. Box 61129
Houston, Texas 77208
Tel:  (713) 567-9518
Fax:  (713) 718-3303
E-mail: Daniel.hu@usdoj.gov

Attorney In Charge for the United States of
America